Okay, as I indicated, the next case is 512-0560. Tina Reinhardt and Kimberly Pritchett, individually, and as mother and ex-friend of Kendra Pritchett v. National Union Fire Insurance Company. Mr. Alexander, you're going to argue for both, is that correct? That is correct, Your Honor. Okay, you may proceed. Thank you. I represent Ms. Reinhardt. This is an issue on the interpretation of an insurance policy. For very brief facts, my client Pritchett and another young woman were in a vehicle that was hit head-on by an employee of Cardinal Maintenance. The policy in question insures Cardinal Maintenance. The policy and the particular terms of the policy that I am going to discuss and that I base my total argument on appear on page 4 of my brief. And the policy starts out by saying we will pay those sums that the insurer becomes legally obligated to pay as damages because of bodily injury or property damage to which the insurance applies. In the second paragraph, it takes away. Second paragraph, our exclusion. Your Honors, if you have that in front of you, if not, I have a copy of it, just the words that I am here about. What my argument to you is that the beginning of that exclusion where it says bodily injury arising out of ownership, maintenance, use, or entrustment to others, that the modifier to others applies to at least the words use or entrustment, if not also to all four terms in that phrase. If it applies as I state, you read it, use to others, this collision did not involve use to others. When I was preparing for this argument today, it appeared to me that there's a couple things that I need to address to you first. And one is that I need to convince you that a Supreme Court case of Northbrook, which is cited in all the briefs, is not controlling. Northbrook, the Supreme Court in the year 2000, used this particular phrase and said it was not ambiguous. When I read the Supreme Court opinion in Northbrook, it is one of the shortest Supreme Court opinions I've seen. But I could not identify as to exactly what the issues were that were being raised on appeal other than it was claimed that this phrase was ambiguous. When you go back to the appellate court decision in Northbrook, it is more thorough and you see that in fact they were saying in that case that the term arising out of made this phrase ambiguous. I am raising a different part of the grammar involved in this particular phrase. Another thing that I need to point out to you is, and this is a really difficult part for both practicing attorneys and courts, is that when we look at language in insurance policies, we just don't look at it from our experience as a practicing attorney or judges. We need to look at it from the view of average, ordinary, normal, reasonable person. That's because that's what the Supreme Court said in Gillen in 2005. That is also quoted in the briefs. Your Honors, I must say that it is difficult for us to do that because when I read an insurance policy, I have been infused with language from the insurance companies as to what these things mean. But we have to step back and look at these phrases and see what they have actually written. A couple of years ago, I believe you all know Judge Desmond of the Second Circuit. I had an argument in front of him where the language of the policy was at issue. And he had read the briefs before the argument and he had in fact shown the grammatical language to his wife to ask her what she saw. It's not this phrase. I'm not trying to say it's this phrasing. But I want you to understand that she had agreed with my interpretation and he ended up fighting for me. So I now have the Judge Desmond rule. And so I also take language to my wife. I do not claim my wife is average. Please understand that. She is above average. But when I need help. Did Judge Van Trees talk to his wife? I cannot say that, Judge. I truthfully don't know. Now, she's a lawyer too, right? She's a lawyer too. That's the problem. What we really need to talk to is an Englishman. And I didn't have to. Okay. But the, and that was my affidavit. That was preclusion. And when I present a phrase like this, what I find, and I'm basically saying what my wife said, is that the two others is a modifier of the whole series. Now, I'm not worried about whether it's a modifier of the whole series. But my point is, is that it does modify the word use. If it does not, I lose. I lose. If it does modify use, then I win. The vehicle was being used by an agent of Cardinal, who is not an other person. He is the company. And the fact that it would read that way states that they should be liable under this policy of insurance. I know, I know, I know that this is a CGL policy. And a lot of times we look at the titles of policies rather than the language. And over the years, I know that in the insurance industry, CGL policies were not intended for automobile. But this policy says that they will pay for bodily injury unless there's an exception. And my point is that this exception is grammatically does not provide an exception for the fact situation we have here. And at this point, I'm not even arguing ambiguity. I'm just saying that that's the way it should read. If there is more than one way to interpret it, obviously it's ambiguous, and I still win. There have been no other decisions I found in the state of Illinois that argue what I'm arguing to you in the use of this phrase. I agree that Northbrook said this phrase is not ambiguous, but it did not view it from the point that I am arguing. And that, I know, is a hurdle that I have to overcome. And that's why I'm here saying, you know, the Supreme Court did not consider this argument. The Supreme Court, though, in this case, indicated that it was the way the facts were pled that caused them to affirm the circuit court. So how would you plead facts that would be consistent with your interpretation? How would the facts of your complaint look to avoid the affirmance that was given here? The facts that are important. First of all, there's an auto accident. No question that's an important fact. Second is that the cardinal has to be liable and that the person that was driving was an employee. And that's all part admitted for purposes of this appeal. If he's an employee, he is not another. It was not used to another person. But in the Northbrook case, you had an auto accident that dealt with a school district, a bus accident, right? Right. So the court there found that the way the complaint was phrased, it fell within the language of policy. What's the difference? Between your facts and their facts? I don't know from those facts that you just stated that there's any difference. And I understand that's my problem. Therein lies the problem. Yes, I understand that. But they didn't consider the argument that I'm making. The appellate court did not consider this argument. It was not raised in either one. But to consider your argument, do we have to find that the policy is ambiguous? I don't believe so. I believe you can find it's ambiguous, but I believe that the grammatical reading is used to others, entrustment to others. I believe that is the proper grammatical reading. If you have a series of A, B, C, and D to others, it modifies all four of them. In this case, like I said, I don't care about the first two because they don't apply. But if A, B, C, and D to others, if it applies to each other, why wouldn't it here? If Northbrook applies, then you lose the coverage, correct? If you believe that Northbrook is controlling, I lose. You lose the coverage. But you don't lose the cause of action. You lose the coverage, but you don't lose the cause of action. We still have a cause of action. Against the company. Yeah, on the auto policy. This is a catastrophe, and the million dollars on the auto policy doesn't cover it. What does it mean to have ownership to others? Or maintenance to others? Yeah, I don't have it. But that's how you're asking us to read it. As an alternative. If you were to find that to others modified all of them, I think it makes it ambiguous. There's two arguments I have, and one of the cases cited by the defendant about the antecedent rule, the court in that case said the modifier just modified the last two terms in the phrase, and there was another case where it modified all four. If it modifies ownership to others or maintenance to others, I think it becomes ambiguous. But I would also accept that it could just modify use and entrustment. In the case that it just used the last two, did it have four or several others than just the last? Just the last two? It did. It had more. I'm sorry? The case I talked about? There were two cases that they argued the last antecedent rule. In my reply, I pointed out that the cases they argued about the last antecedent rule, that one of them was a series, and the court only found that the modifier at the end only applied to a part of the series. In the other case they cited, the court found that the modifier applied to the whole series. And that's on page four of my reply brief. The case they cited there, my argument. Other than the fact that I appreciate the position on the question on Northbrook, my argument is there, it's simple, and that is it. Thank you. Thank you. Ms. Currie. May it please the court, Bridget Currie on behalf of Applebee National Union. You may have to speak up, please. Your Honors, the lower court here correctly rejected the interpretation offered by plaintiffs for the following three reasons. First, the Illinois Supreme Court in Northbrook evaluated the identical exclusion at issue in this case and found that it unambiguously applied to an insured use of an auto. Secondly, the implications of plaintiff's interpretation would lead to illogical coverage results. Third and finally, the proposed interpretation offered by plaintiffs violates recognized standards of construction under Illinois law. Before delving into these three main points, I think it's important to give a contextual framework to the two policies of record in this case that Cardinal purchased for the relevant period. And those are National Union's policy, which is the policy in dispute here, which is a commercial general liability policy. Cardinal also purchased an automobile liability policy. In Oakley Transport v. Zurich Insurance Company, the Illinois Appellate Court held that automobile, excuse me, commercial general liability policies like National Union's cover hazards incident to business with the exception of certain excluded risks, including those involved in the use of an auto. The court there stated, these risks involve unique hazards to which the general business of the insured is generally not subject. For that reason, they are covered as a special class by automobile liability policies. And here in this case, Cardinal purchased both National Union's commercial general liability policy and an automobile liability policy for the relevant period. And indeed, Cardinal's auto liability policy insurer has interplayed in the underlying action, tendering its $1 million limits, recognizing coverage is owed under that policy. And Cardinal's purchase of these two policies illustrates the concept in the insurance industry known as dovetail coverage. And the point there is that policies are purchased to complement one another. And the basis for that is to avoid payment of duplicative premiums. In other words, Cardinal here is purchasing coverage linked to a premium for its general business liability and purchasing a policy of auto liability for coverage for those types of risks. And that brings me to my first point, which is that the court here was correct in rejecting plaintiff's interpretation because the exclusion is clear on its face. When you look at the language again, as opposing counsel mentioned, the exclusion states, this insurance does not apply to bodily injury arising out of the ownership, maintenance, use, or entrustment to others of any auto. Again, as stated, the Illinois Supreme Court in Northbrook property found that this exclusion unambiguously applied to insurance use of the auto. And so there I have to disagree with opposing counsel's statement that Northbrook does not control the FACSA issue here. As in this case, the case in Northbrook involved an insured's use of the bus. The liability there arose from that use. Similarly here, the liability arises from the insured's employee's use of the vehicle. Therefore, Northbrook is directly on point and controls this case. Despite this clear language, plaintiffs attempt to argue that the policy language should be read another way or perhaps is ambiguous. And it says, plaintiffs say that because they state that the language is open to more than one reading. The law in Illinois is not that you can read it simply another way. It has to be another reasonable interpretation. And plaintiffs simply have not proffered a alternative reasonable interpretation of this policy. When we look to the language that's created, we see that the language would read ownership to others, maintenance to others, use to others, or entrustment to others. Of those four phrases, the only ordinary, and we agree that the average ordinary plain meaning should be afforded in these terms. Out of those four, the only ordinary reading is entrustment to others. The phrases ownership to others, maintenance to others, and use to others do not make sense and are not ordinary average plain readings of these phrases. As discussed in our brief, dictionary definitions of the word entrustment are often followed by the word to. The same cannot be said of words own, maintain, or use. And that brings me to my second point as to why the court here was correct in rejecting the interpretation offered by plaintiffs with regard to the exclusion. And that is that if we really try to effectuate the plaintiff's interpretation, we're left with an illogical coverage result. What would happen is this exclusion would only apply where a non-insured or an other is using the vehicle. And plaintiffs have not offered any cogent explanation as to why the exclusion would be so narrowly tailored. Indeed, if we think about when the exclusion would most often apply, or liability would arise out of the use of an auto, it would be when the insured or its employees were operating a vehicle. In addition to that, we see that the unreasonableness of this construction is underscored by established Illinois precedent. As I mentioned, in Northbrook, the insured employee was operating the vehicle there. And that finding is found also in other Illinois appellate court cases, Maxim and Demnico v. Gillette. There, the exclusion was applied where the liability arose from the agent's driver's use of a car. Same with Oakley Transport that I mentioned there. The exclusion applied where the insured's employee negligently used the auto. So with all of these cases, you would really be upending the holdings in those cases which found the exclusion applied where the insured's employee was using the vehicle. So we cannot so narrowly construe the exclusion to apply only to others. Third and finally, this violates the interpretation that's offered, violates standards of construction. I touched on the lack of sense that these statements make just when read aloud. And this basis alone is enough to reject the interpretation. When we look to, as recently as 2012, in Pinkett Insurance Co. v. Tover Snow Professionals, in that case, the court refused to adopt a proposed interpretation of the policy that would result in a distorted reading. In that case, as the insured here, the insured there was attempting to pluck language from parts of the policy and place it in other portions. And in that case, it was a heading of the policy that they were attempting to argue should apply to each subheading in that case. Similarly here, plaintiffs are arguing that the phrase, to others, should be plucked from following entrustment and apply to ownership, maintenance, and use. The court there rejected that type of reading and manipulation of the language. They said, we are left with an ungrammatical, poorly punctuated jumble of sentences that would be the antithesis of a clearly written policy of insurance coverage. Here again, if we're to manipulate the language, we are left with an ungrammatical, poorly phrased sentence that would be the antithesis of a clearly written policy of insurance coverage. Excuse me. Yes. How did the accident actually happen? Your Honor, there were, the Reinhart vehicle, driven by Plaintiff Reinhart, was traveling in the opposite direction of Harrelson's truck and he veered into her lane of traffic. And what was the claim of his negligence? That he did not obey traffic signals, that he was negligent in his operation of the vehicle. And that was it, nothing related to the truck, nothing related to the fact that there wasn't a median, that he could have... I believe there were several bases in the complaint regarding different levels of, or excuse me, different types of negligence engaged in by Harrelson. But all related to the driver? All related to the driver. And even if, you know, there were allegations regarding Cardinal's, you know, inspection of the vehicle or its planning of... What if an axle broke, for example? I'm sorry? What if an axle broke? In that case, you know, that would still be related to the maintenance of the vehicle or Cardinal's overseeing of the vehicle and still would fall within the exclusion. And then the same would be true if Cardinal said you have to get eight hours sleep and the employee refused to follow that instruction. Yes, and in fact, Your Honor is touching on exactly what was at issue in the Northbrook case, which was, in that case, the insurers were attempting to argue that the exclusion didn't apply with regard to use because they argued that the negligence there did not only arise out of the driver's use of the vehicle, but also arose out of the school district's routing of the bus. They said if it would have, then it would have been excluded. But I'm asking where the employee disobeys the employer. In that case as well, that would be under Northbrook's reasoning within the purview of use. Use of the vehicle would fall under that umbrella. Well, Northbrook says that if you can allege facts that are wholly independent of the negligent operation, then you may not have the exclusion. Right, and there have been no allegations that are wholly independent of the operation. So there has been a complaint in this case where we know what the allegations are, and it's your position that the plaintiffs have not pled anything that would lead you to believe that there were acts wholly independent of any negligent operation of the vehicle. Yes, correct, Your Honor. And I just also wanted to touch briefly on the last antecedent rule. And I have to disagree with opposing counsel's interpretation, or, excuse me, readings of those cases, where he stated that the modifying phrase applied to every item in the series, that's simply not the holding of either of the cases evaluating the last antecedent rule. And I think maybe the confusion lies in those cases involved a last antecedent that had sub-series. For instance, in People v. Davis, there was a series of knife-like weapons, but still that was found to be the last antecedent of other weapons in the series. And similarly here, we have a series of words with entrustment being the closest or nearest antecedent. In this case, under recognized standards of construction, the phrase to others properly applies only to entrustment and not to any of the remote phrases here, including ownership, maintenance, and use. I just want to briefly touch, although it was not raised by opposing counsel, on the correctness of the rejection of the Hayes affidavit. In that case, or, excuse me, on that issue, there's no need here to resort to extrinsic evidence of the English teacher's affidavit. Billing reports have consistently rejected linguistic interpretation offered by experts as to the meaning of contracts, because really that's the province of the trial court, and it's a question of law that rests with the trial court. But in addition to that, the affidavit violates Supreme Court Rule 191, which governs the admissibility of affidavits. And there it states that affidavits shall not consist of conclusions, but of facts admissible in evidence. And in this case, the affidavit contains six paragraphs, and the only substantive paragraph is Paragraph 5, in which Ms. Hayes states, in my opinion, based upon my education and experience, this sentence should be read, and then goes on to offer the interpretation. In that case, only a legal conclusion is being offered. There are no facts and evidence that are being offered, so the court was correct to strike that affidavit. Alternatively, the interpretation offers the same problems. It's identical to plaintiff's interpretation, and it results, again, in coverage implications that run contrary to Illinois precedent that have clearly and unambiguously applied this exclusion where it arises out of the use of an insurance automobile. And if the court has no further questions, we would ask then that the court affirm the granting of summary judgment in this matter. Thank you. Rebecca? It was stated that there's an auto policy and that the policy limits have been tendered. In a way, they have been tendered, but they've never been paid because they were tendered on the condition that we give a release against the defendant, and we're not going to do that. So there has been no money from the auto insurer. The counsel talks about manipulating and that this is clear language and no cogent explanation. Your Honors, the position I'm taking is because they have written a policy, and it's their problem as to how they write it. I'm sure I know what they intended, but I disagree with the way they've written it. And if you agree with me, that's their problem, not mine. It was stated that use to others does not make sense. I'm sorry, but to me, use to others is a phrase that I understand, and it means that if the vehicle is used by others, it's excluded. I don't know how else to interpret those words. I would agree that maintenance to others and the other one, it does not seem to make sense, but again, all I'm asking is that you find that it's use to others and entrustment to others. That is my argument. Thank you very much, sir. We'll take this matter under advisement.